**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:08-CV-1465-JOF |
| DFH DEVELOPMENT, INC., et al., | : : | |
| Defendants. | : | |

## **OPINION AND ORDER**

This matter is before the court on Plaintiff's motion for summary judgment [33].

**I.  Background**

    **A.  Procedural History and Facts**

Plaintiff, Auto-Owners Insurance Company, filed this declaratory judgment action against Defendants, DFH Development, Inc., Don Henry Custom Homes, Inc., Don Henry, Bradley E. Lowery, Lowery & Associates and John Doe Persons 1-3, on April 18, 2008, seeking a declaration that Auto-Owners has no duty to defend or indemnify the Henry Defendants in litigation between the Henry Defendants and the Lowery Defendants.[1]

---

[1] The court refers to DFH Development, Inc., Don Henry Custom Hones, Inc., and Don Henry collectively as the Henry Defendants and Bradley E. Lowery, Lowery & Associates collectively as the Lowery Defendants.

On August 3, 2005, Don Henry Custom Homes filed suit against Bradley W. Lowery and Lowery & Associates in the Superior Court of Henry County. Allen Bodiford represented Don Henry in connection with the Henry County lawsuit. On September 6, 2005, the Lowery Defendants answered Henry's complaint and filed a counterclaim for libel and slander and tortious interference with business and contractual relations. The same day, the Lowery Defendants filed a separate lawsuit against Don Henry in the State Court of Clayton County, also raising claims of libel and slander and tortious interference with business and contractual relations.[2] The court refers to the Henry County and Clayton County lawsuits as the Underlying Lawsuits.

Auto-Owners issued a commercial general liability insurance policy to DFH Development, Inc., with an effective period of December 21, 2004, through December 21, 2005. The Policy was procured through Tara Financial Group whose President is Noel Edwards. The Policy provides that the holder must notify Auto-Owners "as soon as practicable" of an "occurrence" or offense that might result in a claim or if a claim is made or "suit" is brought. The Policy also provides that the holder "must see to it that we receive written notice of the claim or 'suit' as soon as practicable." The Policy covers "bodily injury" and "property damage," but excludes coverage if such injury or damage was "expected or intended from the standpoint of the insured." The Policy also covers "personal

---

[2] Although the Clayton County suit was dismissed, it was later re-filed and remains pending.

2

injury" or "advertising injury" which includes "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." However, the Policy excludes coverage for "personal injury" or "advertising injury" if it was "done by or at the direction of the insured with knowledge of falsity." Further, the Policy excludes coverage if the "personal injury" is "directly or indirectly related to the past, present or prospective employment of any person or persons by an insured." The Henry Defendants seek coverage under the Policy for the claims asserted against them in the Underlying Lawsuits.

In September 2005, Mr. Henry was notified of the Counterclaim filed against DH Custom Homes in the Henry County Lawsuit. Later in the same month, Mr. Henry was notified of the complaint filed against him in the Clayton County Lawsuit.

Mr. Bodiford testified that he told Mr. Henry in September 2005 that he should take a copy of the Answer and Counterclaim in the Henry County suit to Custom Homes' insurance carrier and put them on notice. Mr. Henry testified that the same day he received this instruction from Mr. Bodiford, he called Mr. Edwards, President of Tara Financial Group, and told him about the lawsuit. Mr. Bodiford overheard Mr. Henry on the phone state that he would bring a copy of the lawsuit to Tara Financial. Mr. Edwards testified that he first learned of the disputes between Henry and Lowery some time after April 2006. He further stated that he did not have any communication with Mr. Bodiford until June 2007.

3

Several days later, Mr. Henry told Mr. Bodiford that he had also been served with the Clayton County lawsuit. Mr. Bodiford again told Mr. Henry to take a copy of that lawsuit to the Custom Homes Insurance Agent. Mr. Henry testified that he took a copy of the lawsuits to Tara Financial within days of his receipt. Mr. Bodiford recalls that Mr. Henry told him that he had taken the copies to Tara Financial. Mr. Bodiford further testified that several days later, an employee of Tara Financial called him and asked Mr. Bodiford to fax her copies of the complaints so that she could send them to Auto-Owners. Mr. Bodiford did fax her those copies.

Mr. Edwards testified that in June 2007, Mr. Henry contacted him about his coverage under the Policy. Mr. Edwards faxed a letter response to Mr. Henry on June 7, 2007. Mr. Henry's first written communication to the Tara Financial Group was on October 30, 2007. Mr. Bodiford communicated again with the Tara Financial Group on November 7, 2007.

Steve Alger, a claims representative for Auto-Owners, testified that Auto-Owners was not placed on notice of the Underlying Lawsuits until November 8, 2007. *See* Alger Aff., ¶ 8. Auto-Owners retained counsel to represent the Henry Defendants in the Underlying Lawsuits under a reservation of rights regarding the issue of late notice, among others.

4

### B. Contentions

Auto Owners contends that Defendants have presented no evidence that Auto Owners received any notice of the Underlying Lawsuits before November 2007. Even accepting testimony of varying quality that some kind of notice was provided to Tara Financial, Auto-Owners argues, there is no evidence that the insurance company itself received written notice. Because failure to provide notice vitiates Auto-Owners' duty to defend, Plaintiff asks the court to grant its motion for summary judgment declaring Auto-Owners has no obligation to defend or indemnify Henry for the underlying lawsuits. In the alternative, Auto-Owners argues that the claims raised in the underlying lawsuits are not covered by the Auto-Owners insurance policy issued to Henry.

Defendants[3] respond that there is testimony in the record from which a jury could conclude that Noel Edwards at Tara Financial received faxed copies of the Underlying Lawsuits against Henry. Therefore, Defendants argue, summary judgment is not appropriate as to the notice issue. Further, Defendants argue that the Auto-Owners insurance policy specifically covers libel and slander claims and none of the exclusions under the policy applies to the claims in the Underlying Lawsuits.

---

[3]The Henry Defendants filed a substantive response to Plaintiff's motion for summary judgment. The Lowery Defendants adopted the Henry Defendants' response.

5

**II. Discussion**

The obligations of parties to an insurance policy are a matter of contract, and the parties are bound by the terms of the policy. *Resolution Trust Corp. v. Artley*, 24 F.3d 1363, 1367 (11th Cir. 1994). The Policy at issue here clearly states that Auto-Owners must receive written notice of any potential claim or suit "as soon as practicable."

Auto-Owners asserts that the notice provision is a condition precedent to coverage and Defendants do not dispute this assertion. It is well established under Georgia law that notice provisions which are made a condition precedent to coverage are valid, and where an insured has not demonstrated sufficient justification for failure to give notice in accordance with such notice provisions, then the insurer is not obligated to provide coverage or a defense. *Federated Mut. Ins. Co. v. Ownby Enterprises, Inc.*, 278 Ga. App. 1, 2 (2006); *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 28 (2000); *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221 (1976). Generally, notice provisions are made a condition precedent to coverage so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available. *Richmond*, 140 Ga. App. at 221. Where the failure to give notice is not made a condition precedent to coverage, an insured's failure to give notice does not preclude coverage unless the insurer has been prejudiced by the delay. *See Manzi v. Cotton States*

6

*Mut. Ins. Co.*, 243 Ga. App. 277, 278 (2000) (examining the holding in *Gregory v. Allstate Ins. Co.*, 134 Ga. App. 461 (1975), where the policy was not made a condition precedent to coverage).

Here, the insured's duties of notice are contained in Section IV – Commercial General Liability Conditions. This would appear to indicate that notice is a condition precedent. However, even if the notice provision is not a condition precedent, it is clear in light of the ongoing Underlying Litigation that Auto-Owners would be prejudiced by a two-year delay of notice.

The court now turns to consider whether Auto-Owners received notice. On a motion for summary judgment, the court construes all facts in the light most favorable to the non-movant. Therefore, despite the many evidentiary issues ably argued by Auto-Owners, the court presumes that Mr. Henry did notify Mr. Edwards at Tara Financial shortly after receiving notice of the underlying lawsuits.

Mr. Henry, however, provided no direct testimony regarding any actions that may have been taken with respect to Auto-Owners. Further, Defendants do not dispute that Auto-Owners did not receive written notice of the Underlying Lawsuits until November 2007, more than two years after the suits were filed. Rather, Defendants appear to argue that whatever notice Mr. Henry provided to Tara Financial was sufficient for the purposes of the Policy. Defendants admit that Tara Financial is an independent insurance agency. Mr.

7

Edwards testified that "commonly" claims are made to Auto-Owners through agents like Tara Financial Group. Mr. Henry believed that notice to Tara Financial would suffice as notice to Auto-Owners.

In *International Indemnity Company v. Odom*, 174 Ga. App. 6 (1985), International Indemnity argued that Odom's claim for coverage should be barred because International Indemnity did not receive notice of a March 3, 1978 automobile accident until January 11, 1982. The insurance policy at issue stated that the insured should "notify your agent or Alexander Underwriters, Inc." in the event of an accident. *Id.* at 6 (emphasis added). Odom applied for his insurance through the George H. Greene Insurance Agency. He made all payments on his insurance to Greene. *Id.* at 7. Odom notified Greene of the accident shortly after its occurrence.

International Indemnity contended that notice to Greene was not sufficient because Greene was not an agent of International Indemnity's but rather was an independent broker. The court rejected this argument and stated, "[a]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Id.* The court also held that estoppel arises against the denial of agency in such circumstances that "a person of ordinary prudence conversant with business usages is justified in assuming that such agent

8

AO 72A
(Rev.8/82)

has the authority to perform a particular act and deal with the agent upon that assumption." *Id.* Under the facts and circumstances presented, the court held that Greene had apparent authority to receive notice on behalf of International Indemnity. *Id.*

In *Southeastern Express Systems, Inc. v. Southern Guaranty Insurance Company*, 224 Ga. App. 697 (1997), George Barnes, a principal of Southeastern Express, obtained business insurance coverage with Southern Guaranty for Southeastern Express through his brother-in-law, Peter Dortch, who was an independent insurance broker. Under the terms of Southern Guaranty's contract with Dortch, Dortch acted as an independent contractor. Barnes was sued in 1992 and informed Dortch. Dortch told Barnes that the Southern Guaranty policy would not cover the lawsuit. *Id.* at 699. Barnes accepted Dortch's opinion and did not try to file for a claim. *Id.*

The court recounted the principle that "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer." *Id.* at 700. Further, because Dortch had a family relationship with Barnes and was an independent insurance agent, the court held that notice to Dortch was not notice to Southern Guaranty. *Id.* In contrast, the court noted:

> When the terms of the policy or instructions stamped upon the face of a liability policy instruct the insured that it is to provide notice of suit, either to the independent insurance agent or the insurer, such delegation of apparent authority, notwithstanding the independent contractor relationship, will estop the insurer to deny any notice which was given to the independent agent under its instructions.

9

*Id.* The court rejected Barnes' claim because "neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer." *Id.* The court also limited *Titan Indemnity Co. v. Hall County*, 202 Ga. App. 38, 39 (1991) (holding that fact issue existed as to whether notice to insurance agent could be considered notice to the insurance company), to its facts where "an independent agent is designated under the stamp on the face of the policy with apparent authority to accept notice for the insurer." *Id.* at 701-02 (noting that *Titan* could not be extended beyond its legal and factual basis to create a rule of constructive notice when there is no real or apparent authority).

As an initial matter, in contrast to the discussions in *Odom* and *Southeastern Express*, the insurance policy here specified that notice could only be given to Auto-Owners. In *Odom*, the policy at issue also designated the agent as a person to whom notice could be made. Notably, in *Southeastern Express*, the court specifically rejected the insured's notice argument because "neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer." 224 Ga. App. at 700.

Defendants have not argued nor have they presented any evidence to show that Tara Financial was acting as an agent of Auto-Owners such that notice to Tara Financial could be imputed to Auto-Owners. In fact, Defendants, themselves, agree that Tara Financial is

10

an independent insurance agent. The broker's role is to connect insureds with an insurance company and procure coverage through a policy. It is through the actions taken after coverage is procured – such as a custom of accepting claims or premiums – that apparent authority may be established with respect to who may receive notice. None of the facts highlighted by Defendants sheds any light on the issue of apparent authority, nor do Defendants even make such an argument.

Defendants do point to the testimony of Noel Edwards, the President of Tara Financial, who states that it is customary for notice to be delivered to Tara Financial. However, Defendants have not asserted that Tara Financial on any occasion submitted a notice of a claim from Henry to Auto-Owners. As the court noted in *Odom*, the premise of the theory of "apparent authority" is that certain conduct causes a third person reasonably to believe that the insurance company consents to have the agent act on its behalf. Here, Defendants have pointed to no conduct which they, themselves, knew which could have caused them to believe that Auto-Owners consented to Tara Financial receiving notice on its behalf. Thus, whatever notice was provided to Tara Financial at any point in the chronology cannot be imputed as notice to Auto-Owners.

Significantly, there is no dispute that Auto-Owners, itself, was not notified of the Underlying Lawsuits until November 2007. The two-year delay clearly is not prompt notice. Courts applying Georgia law have held delays of four months to one year to preclude

11

recovery as a matter of law. *See Canadyne-Georgia Corp. v. Continental Ins. Co.*, 999 F.2d 1547, 1556 (11th Cir. 1993); *Cotton*, 652 F. Supp. at 856 ("The Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law."); *Kay-Lex Co. v. Essex Inc. Co.*, 286 Ga. App. 484 (2007) (twelve-month delay unreasonable as matter of law); *Caldwell v. State Farm Fire & Cas. Ins. Co.*, 192 Ga. App. 419, 421 (1989); *EVI Equipment, Inc. v. Northern Ins. Co.*, 188 Ga. App. 818 (1988) (eleven-month delay); *Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga. App. 714 (1974) (four-month delay).

As such, the court GRANTS Plaintiff's motion for summary judgment [33] and finds that Auto-Owners has no duty to defend or indemnify the Henry Defendants in the Underlying Lawsuits. Because the court decides the issue based on Defendants' failure to provide prompt notice to Plaintiff, the court need not reach the issue of whether the claims raised in the Underlying Lawsuits are covered by the Auto-Owners insurance policy.

### III. Conclusion

The court GRANTS Plaintiff's motion for summary judgment [33].

**IT IS SO ORDERED** this 12th day of August 2009.

                                           /s J. Owen Forrester
                                           J. OWEN FORRESTER

AO 72A
(Rev.8/82)

SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)